UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-264-TBR

J & J SPORTS PRODUCTIONS, INC.,                                              PLAINTIFF

v.

ALBERT W. SUTTON, INDIVIDUALLY
and d/b/a CLUB ELEMENT, *et. al.*,                                           DEFENDANTS

**MEMORANDUM OPINION**

On September 26, 2017, Plaintiff J & J Sports Productions, Inc. obtained an entry of default against Defendants Albert W. Sutton, individually and d/b/a Club Element; Elaine Sutton, individually and d/b/a Club Element; and The Reel Fathertime and Sunshine Productions LLC. [DN 10.] Thereafter, the sole issue to be determined prior to Judgment was the amount of damages. On December 13, 2017, the Court held a damages hearing, at which both Plaintiff and Defendants had the opportunity to present evidence. For the reasons explained in detail below, the Court will enter a judgment in favor of J&J Sports on its claim under 47 U.S.C. § 605 and award J&J Sports $6,000.00 in statutory damages, $2,000.00 in enhanced damages, $1,560.00 in attorney's fees, and $422.50 in costs, for a total amount of $9,982.50. The Court will enter and Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

On May 2, 2015, a professional boxing match entitled *"The Fight of the Century" Floyd Mayweather, Jr v. Manny Pacquiano Championship Fight Program* (the "Program") aired on television. [DN 1 at 4 (Complaint).] Plaintiff, J & J Sports Productions, Inc. ("J&J Sports") owned the exclusive nationwide distribution rights to the Program. [*Id.*] After discovering that Defendants Albert and Elaine Sutton broadcasted the Program at Club Element, their place of

1

business, without first purchasing a license to show the Program in a commercial establishment, J&J Sports brought the instant suit. [DN 1 (Complaint).] Specifically, J&J Sports seeks damages for violations of the Cable Communications Policy Act, 47 U.S.C. §§ 553 and 605. After Defendants failed to appear, file an answer, or file any other pleadings to defend against this action, the Court granted Plaintiff's motion for entry of default against Defendants on September 26, 2017. [DN 10 (Entry of Default).] Thereafter, the Court held a telephonic status conference in which both Plaintiff and Defendants Albert and Elaine Sutton participated. [DN 11.] Defendants later filed a post-default answer to Plaintiff's complaint, [DN 13], and Plaintiff filed a memorandum addressing its requested damages. [DN 14.] The Court held an evidentiary hearing on the issue of damages on December 13, 2017. [DN 15.] Both J&J Sports and the Suttons participated at the hearing.

## STANDARD

After the Clerk of Court enters a party's default pursuant to Federal Rule of Civil Procedure 55(a), the Court may thereafter enter default judgment pursuant to Rule 55(b)(2) after, if necessary under the circumstances of the case, holding a hearing to "determine the amount of damages." Fed. R. Civ. P. 55(a)–(b)(2)(B).

## DISCUSSION

Though J&J Sports brings suit under both 47 U.S.C. § 553 and § 605, these statutes provide alternative means of recovery, and therefore J&J Sports may only recover under one. *See J&J Sports Prods., Inc. v. Ultimate Jet-A-Way Sportsbar & Lounge, Inc.*, No. 4:17-CV-1038-RBH, 2017 WL 4923559, at *3 (D.S.C. Oct. 31, 2017) ("[T]he two statutory schemes provide relief for the alternate means by which the Program might have been received (satellite or cable)."); *J & J Sports Prods., Inc. v. Smalls*, No. CV 16-4883, 2017 WL 4680612, at *2 (E.D.

Pa. Oct. 18, 2017) ("'Section 553 prohibits the unauthorized interception and transmission of cable communications, whereas § 605 prohibits the unauthorized interception and transmission of encrypted satellite cable programming.' Thus, a defendant cannot be held liable under both sections.") (internal citation omitted) (citing *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001)). Here, J&J Sports has elected to proceed under § 605 for the purposes of a judgment of damages in this case.[1]

### A. Liability under 47 U.S.C. § 605(a)

Section 605(a) provides, in part, that

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . .

47 U.S.C. § 605(a). Accordingly, to prevail under § 605(a), "Plaintiff must demonstrate that Defendants intercepted the Program's signals and 'divulged' or aired it to commercial patrons." *Ultimate Jet-A-Way Sportsbar & Lounge, Inc.*, 2017 WL 4923559, at *3. In this case, it is undisputed that the Suttons broadcast the Program at Club Element without having purchased the necessary license from J&J Sports. Rather, the Suttons only contend that they "were unaware that said fight . . . could not be shown in public facility." [DN 13 (Defendants' Post-Default Answer).] However, "Section 605(a) is a strict liability statute," and therefore Defendants' knowledge or intent is irrelevant. *J & J Sports Prods., Inc. v. J & J Keynote Lounge, Inc.*, No. 11-CV-15002, 2013 WL 1747803, at *6 (E.D. Mich. Apr. 23, 2013) (citations omitted). In sum,

---

[1] The Court notes that, in this case, whether J&J Sports recovers statutory damages under § 553 or § 605 ultimately makes no difference, as the Court's damages award in this case falls within the parameters of both statutes. Section 553 allows for statutory damages between $250 and $10,000 and enhanced damages of up to $50,000, 47 U.S.C. §553(c)(3)(A)(ii)–(3)(B), while § 605 allows for statutory damages between $1,000 and $10,000 and enhanced damages of up to $100,000. 47 U.S.C. § 605(e)(3)(C)(I)(II)–(C)(ii). Accordingly, the Court's award of $6,000 of statutory damages and $2,000 of enhanced damages here falls within either statute's parameters.

3

Defendants admit that the "[f]ight was purchased from cable provider by a member of [the] club" and shown at Club Element with their knowledge. [DN 13.]

Additionally, J&J Sports submitted the affidavit of its investigator, Steve Clark, who averred that he witnessed the Program being shown at Club Element on May 2, 2015 on multiple screens to approximately 126, 134, and 149 people, based on three different head counts he took throughout the night. [DN 14-1 at 1–2 (Clark Affidavit).] At the evidentiary hearing, Elaine Sutton explained that she and her husband, Albert Sutton, ran and received all of the profits from Club Element. She further admitted that she knew the fight was going to be shown at Club Element on May 2, 2015, that she advertised the Program on Club Element's Facebook page, and that she offered drink specials on the night of the fight. Based on the foregoing undisputed facts, the Court finds that J&J Sports has shown that Defendants violated § 605(a), and therefore that J&J Sports is entitled to judgment in its favor.

**B. Damages under 47 U.S.C. § 605**

Section 605(e) identifies a range of penalties courts may impose for violations of § 605(a). The Court may impose "temporary and final injunctions" and "award damages," and must "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 606(e)(3)(B)(i)–(iii). Here, J&J Sports requests an award of damages, attorneys' fees, and costs.

With regard to damages, § 605 permits an aggrieved party to recover, at their choosing, either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(I)–(II). Here, J&J Sports seeks an award of statutory damages, which includes "a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, § 605 allows for an additional recovery "of not more than $100,000" if "the court finds that the violation was

committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

### 1) Statutory Damages

J&J Sports argues, first, that the Court should award it the maximum statutory damages amount of $10,000. [DN 14 at 9.] In detail, J&J Sports argues that an award of the maximum amount of statutory damages is necessary both to compensate it for its losses and to deter future piracy. [*Id.* at 7–8.] According to Clark's affidavit, Club Element had between 126 and 149 people present on its premises on the night of May 2, 2015. [DN 14-1 at 1–2.] Based on the "Rate Card" detailing the prices for commercial establishments to purchase the Program, the license fee for a business with a capacity of between 101 and 200 people was $6,000. [DN 14-2 at 11.] Some courts awarding statutory damages under § 605 simply award the cost of licensing the program at issue. *See, e.g.*, *Joe Hand Promotions, Inc., v. The Sports Nut, LLC d/b/a The Sports Zone a/k/a Whiskey Creek Bar & Grill & Eric Albright*, No. 4:16-CV-1890-VEH, 2017 WL 6492546, at *3 (N.D. Ala. Dec. 19, 2017) ("Determining the appropriate level of damages (within the ranges provided by the statute) is left to the discretion of this Court . . . Typically, courts apply one of two methods: 1) award damages as a flat sum; and 2) other courts—'particularly those within the Eleventh Circuit' award the plaintiff 'the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event.'") (citations omitted); *Smalls*, No. CV 16-4883, 2017 WL 4680612, at *3 ("Thus, the Court will award $2,200 in damages, based on the cost of a sublicense fee."); *Ultimate Jet-A-Way Sportsbar & Lounge, Inc.*, No. 4:17-CV-1038-RBH, 2017 WL 4923559, at *5 ("The Court concludes that statutory damages of $3,070.00 should be granted. Under the facts and circumstances, the Court concludes that the amount of the license fee [of $3,000] plus the gross profit [of $70], when

combined with enhanced damages and attorney fees reflected below is just compensation and a fair reflection of damage."); *J&J Sports Prods., Inc. v. Ramsey*, No. CV 17-1942, 2017 WL 4287200, at *2 (E.D. Pa. Sept. 27, 2017) ("The evidence is undisputed. J&J charges $9,000 for licensing this telecast at a facility with a capacity of 200 to 300 persons. We award this contract fee as the statutory damages.").

In this case, J&J Sports argues that awarding only the $6,000 licensing fee for statutory damages would inadequately compensate it, inadequately penalize Defendants, inadequately and deter future piracy. [DN 14 at 4–5.] However, the Court finds that this argument is more appropriately directed toward enhanced damages for willfulness and commercial or private gain, which the Court will address below. For the purposes of statutory damages, however, the Court is satisfied that the $6,000 that J&J Sports would have received had Defendants lawfully purchased the Program is an appropriate amount.

**2) Enhanced Damages for Willfulness and Commercial Advantage or Private Gain**

Next, J&J Sports requests enhanced damages of three times the statutory damages award. As the Court noted above, § 605 allows a Court to enhance the amount of damages by "not more than $100,000" if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). J&J Sports argues strenuously that Defendants acted "willfully" when they showed the Program at Club Element. Courts determining willfulness under § 605 consider various factors, including "1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gain; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *J & J Sports Productions Inc. v. Rio Bravo, LLC*, No. CV-GJH-16-3767, 2017 WL 6722810, at *3 (D. Md. Dec. 27, 2017) (quoting *J & J Sports Prods., Inc. v. Quattrocche*, No. WMN-09-CV-3420, 2010 WL 2302353, at *2 (D. Md. June 7,

6

2010)); *see also Joe Hand Promotions, Inc. v. The Sports Nut, LLC d/b/a The Sports Zone a/k/a Whiskey Creek Bar & Grill & Eric Albright,* No. 4:16-CV-1890-VEH, 2017 WL 6492546, at *4 (N.D. Ala. Dec. 19, 2017) (Identifying such factors as "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge.") (quoting *J & J Sports Prods., Inc. v. Tu*, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008)).

At the evidentiary hearing regarding damages in this action, Elaine Sutton testified that she was the manager of Club Element, that she and her husband Albert received the profits from Club Element, that she was in charge of what went on the night of May 2, 2015, that she knew the Program was going to be shown, that a "member" of Club Element purchased the fight individually to show at Club Element, that the member paid the Suttons $75 to show the fight there, and that the member charged an admission fee from customers. J&J Sports also produced evidence that Club Element advertised the fight on its Facebook page on April 27, 2015, five days before the fight. At the hearing, Elaine Sutton testified she was in charge of Club Element's Facebook page and that she posted that advertisement. The Facebook post read "FIGHT NIGHT AT CLUB ELEMENT WITH MAYWEATHER AND PACQUIO! MAY 2ND! DRINK SPECIALS ALL NIGHT. TICKETS 10.00 20.00 AT THE DOOR." [DN 14-1 at 4.] In other words, Club Element advertised the Program, advertised drink specials, and charged either $10 or $20 for entry.

On the other hand, the Suttons claim that they did not make a profit on the night of May 2, 2015. [DN 13 at 1.] Nonetheless, Elain Sutton testified at the evidentiary hearing that the food and drink revenues from that night were approximately $1,200. Moreover, she testified that the

member who purchased the Program individually payed them $75 to show it at Club Element. Overall, the facts that Defendants advertised the event, advertised that admission would cost between $10 to $20, and had up to 149 customers on the night of the Program, ran drink specials, and showed the Program on multiple screens are sufficient to persuade the Court that there was at least some willfulness and a purpose to achieve commercial or private financial gain on behalf of Club Element and, by extension, the Suttons. *See Joe Hand Promotions, Inc*, 2017 WL 6492546, at *4 ("Given that Defendants broadcast the Event without JHP's permission, ostensibly for the purpose of stimulating its own bar business and financial gain, the Court finds that enhanced damages are appropriate."); *J & J Sports Productions Inc. v. Rio Bravo, LLC*, No. CV GJH-16-3767, 2017 WL 6722810, at *4 (D. Md. Dec. 27, 2017) ("Defendant's intentional act of intercepting and exhibiting the Program without paying the fee is sufficient to warrant some enhanced damages, and Plaintiff will be awarded three times the amount of statutory damages."); *Ultimate Jet-A-Way Sportsbar & Lounge, Inc.*, No. 4:17-CV-1038-RBH, 2017 WL 4923559, at *5 ("According to Plaintiff's private investigator's affidavit, Defendants did charge a cover charge of $10.00, which charge establishes a motive of private financial gain. Defendant Ultimate's conduct was intentional and willful, as it did not lawfully license the Program from Plaintiff and exhibited it to patrons.") (internal citations omitted).

Because the Court finds that J&J Sports has produced sufficient evidence of willfulness and an intent to obtain commercial or private financial gain on behalf of Defendants, the Court finds that an award of enhanced damages is appropriate. However, the Court finds J&J Sports' request for an award of three times the amount of statutory damages to be excessive. Here, the Court must "consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously

impairs the viability of the defendant's business (at least for a first offense)." *J & J Sports Prods., Inc. v. Tu*, No. 08 C 4119, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008). Here, Defendants are first-time offenders and testified repeatedly that they were unaware that it was illegal to show the fight at Club Element without paying the $6,000 license fee. Taking all of the above facts into consideration, the Court will award enhanced damages in the amount of $2,000.

### C. Attorneys' Fees and Costs under 47 U.S.C. § 605

Finally, § 605(e) provides that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 606(e)(3)(B)(iii). Because J&J Sports is the prevailing party in this action, it is entitled to an award of reasonable fees and costs. Along with its memorandum in support of damages, J&J Sports attached an affidavit of its counsel, Helen Cooper, which documents attorney's fees of $1,560.00, which represents a total of eight hours multiplied by an hourly rate of $195. [DN 14-4 at 1.] Courts in this district have awarded similar amounts in § 605 cases. *See J&J Sports Prods., Inc. v. Burgess*, No. 3:15-CV-721-JHM, 2017 WL 1788686, at *4 (W.D. Ky. Apr. 10, 2017), *report and recommendation adopted*, No. 3:15-CV-721-JHM, 2017 WL 1788674 (W.D. Ky. May 4, 2017) (Awarding "attorney's fees of $1,170.00 representing 5.5 billable hours at a rate of $195 an hour."). Additionally, the affidavit identifies costs of $422.50, made up of the $400 filing fee for this lawsuit and $22.50 for the cost of certified mail. [DN 14-4 at 1.] The Court has examined counsel's affidavit and accompanying documentation and finds that both the attorney's fees and costs are reasonable in light of the litigation at hand. Accordingly, the Court will award J&J Sports attorney's fees of $1,560.00 and costs of $422.50.

CONCLUSION

For the reasons outlined fully above, the Court finds that Judgment in J&J Sports Productions, Inc.'s favor on its claim under 47 U.S.C. § 605 is warranted. The Court will award J&J Sports $6,000.00 in statutory damages, $2,000.00 in enhanced damages, $1,560.00 in attorney's fees, and $422.50 in costs, for a total amount of $9,982.50. Defendants Albert Sutton, individually and d/b/a Club Element; Elaine Sutton, individually and d/b/a Club Element; and The Reel Fathertime and Sunshine Productions LLC shall be jointly and severally liable for this entire amount. The Court will enter an Order and Judgment consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

Date:

cc: Counsel

    Pro Se Defendants
    Albert and Elaine Sutton
    1021 Reeves Road
    Louisville, KY 40219
    PRO SE